UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
CITIZENS FOR RESPONSIBILITY         )
AND ETHICS IN WASHINGTON,           )
                                    )
        Plaintiff,                )
                                    )
        v.                        )    Civil Action No. 10-1712 (RMC)
                                    )
U.S. DEPARTMENT OF                  )
EDUCATION,                          )
                                    )
        Defendant.                )
_____ )

## OPINION

Citizens for Responsibility and Ethics in Washington (CREW) fears that policy-makers in the U.S. Department of Education were unduly influenced by investors in for-profit education when DoEd developed regulations for that sector. CREW sought documents from DoEd and, dissatisfied with the responses, now sues under the Freedom of Information Act. CREW's allegations sound in conspiracy, but there is nothing conspiratorial about DoEd's handling of its FOIA request. Summary judgment will be granted to DoEd on its motion for summary judgment concerning the scope of its searches and denied to CREW on its motion for partial summary judgment concerning FOIA Exemption 5.

## I.   FACTS

In the face of news articles[1] that suggested undue influence in the development of DoEd's regulations for the for-profit education sector, CREW filed a request with DoEd on July 23, 2010, pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552. *See* FOIA

---

[1] Two of the articles CREW cited are Chris Frates, Short Sellers Flag School Stocks, *Politico*, June 30, 2010; and Jennifer Epstein, 'Bad Apples' or Something More?, *Inside Higher Ed*, June 24, 2010. *See* Def. MSJ [Dkt. 17], Exs. to II Cook Decl. [Dkt. 17-2], Ex. A (FOIA Request) at 3.

Request at 3.   CREW sought communications from April 20, 2009, to the present from or between DoEd officials and 11 specified individuals or entities:

> Mr. Steven Eisman; Any or all individuals identified as officers, directors, or employees of FrontPoint Partners, LLC; Any or all individuals identified as officers, directors, or employees of Morgan Stanley Investment Management, Inc.; Deputy Undersecretary of Education Robert Shireman; Ms. Pauline Abernathy; Any or all individuals identified as officers, directors, or employees of the Institute for College Access and Success; Mr. Barmak Nassirian; Any or all individuals identified as officers, directors, or employees of the American Association of Collegiate Registrars and Admissions Officers; Mr. Manual P. Asen[s]io; Any or all individuals identified as officers, directors, or employees of The Alliance for Economic Stability; Ms. Johnette McConnell Early.

*Id.*[2]

On October 21, 2010, DoEd contacted CREW about its request, which CREW narrowed somewhat, clarifying that it sought "only internal communications regarding any Department communications with the outside entities listed in" the FOIA Request.  *See* Def. MSJ, II Cook Decl. [Dkt. 17-1] ¶ 10 (quoting II Cook Decl., Ex. B (Oct. 25, 2010, Email from Anne Weisman) (internal quotation marks omitted)).   The FOIA Service Center at DoEd initially assigned CREW's FOIA request on August 18, 2010 to four offices likely to have responsive documents: the Office of Communication and Outreach; the Office of Legislative and Congressional Affairs; the Office of Postsecondary Education; and the Office of the Undersecretary.  *Id.* ¶ 14.   The Office of the Undersecretary sent the request to the Office of Planning, Evaluation and Policy on November 3, 2010.  Def. MSJ, I Cook Decl. [Dkt. 17–6] ¶ 6. In the course of this litigation, the FOIA Service Center further assigned the request to the Office of the General Counsel; the Office of the Secretary; the Office of Federal Student Aid; and the

---

[2]  After an initial denial, DoEd, without explanation, granted CREW's request for a waiver of fees.

Office of the Deputy Secretary.  II Cook Decl. ¶ 15.  DoEd identified no other likely sources for responsive documents.  *Id.*

DoEd provided responses to CREW in multiple segments.

- On November 23, 2010, DoEd sent 42 pages of records from the Office of Planning, Evaluation and Policy and 8 pages of records from the Office of Communication and Outreach, in full, and notified CREW that the Office of Legislative and Congressional Affairs had no responsive records.  I Cook Decl. ¶ 8.

- On December 3, 2010, DoEd sent a "final" response of 1,354 pages from the Office of Postsecondary Education and 506 pages from the Office of the Undersecretary.  *Id.* ¶ 9.  The Office of Postsecondary Education redacted information on only four pages, Def. MSJ, Smith Decl. [Dkt. 17-8] ¶ 10–12, and the Office of the Undersecretary released all 506 pages in full.

- On December 22, 2010, DoEd provided in full a single document responsive to CREW's request that was discovered inadvertently in a different FOIA search.  I Cook Decl. ¶ 10.

- On April 15, 2011, DoED produced an Interim Response to CREW containing 80 pages located in a further search.  II Cook Decl. ¶ 28.

- On April 22, 2011, a further Interim Response produced 252 pages of records.  *Id.* ¶ 29.

- On April 28, 2011, DoEd produced a further 18 pages of responsive records.  *Id.* ¶ 30.

- On May 10, 2011, the Department in its final response produced 97 pages to CREW, which were mostly reprocessed versions of documents it had already sent.  *Id.* ¶ 31.

- With its brief filed on June 1, 2011, DoEd attached 106 pages of records, which were reprocessed versions of documents previously sent to CREW.  *Id.* ¶ 32; *see also* Def. MSJ, Ex. K [Dkt. 17-4] (additional reprocessed records).

Prior to February 2011, DoEd allowed current agency employees to search only their own email accounts.  Def. MSJ, I Bashford Decl. [Dkt. 17-5] ¶ 10.  Therefore, when the FOIA request was first received, DoEd searched only the emails of the Department employees named by CREW, on an account-by-account basis.  *See* Def. MSJ at 8 (listing declarations of

employees who searched in each of five DoEd offices). Beginning in February 2011, select DoEd employees with "Folder Admin" permission in the information technology (IT) system were authorized to conduct agency-wide email searches. I Bashford Decl. ¶ 10. Thereafter, Terry Bashford, an IT Specialist in the OGC who had the "Folder Admin" access required to conduct an agency-wide search, searched all Department email since April 2009 for records responsive to CREW's request. *Id.* ¶ 11.

Mr. Bashford conducted two searches. The first, on March 28, 2011, produced over 200,000 responses, many of them obviously unrelated to CREW's request. *Id.* ¶ 13. Mr. Bashford modified the search terms slightly and ran a second search on March 31, 2011, that produced approximately 14,000 results. *Id.* ¶ 14. Many of the documents were, again, obviously unrelated to the FOIA request; Mr. Bashford removed 1,710 documents that he immediately determined to be nonresponsive (i.e., automated administrative emails) and submitted the rest to individual DoEd offices for manual processing. *Id.* ¶¶ 14–15.[3] Apart from the email searches conducted by Mr. Bashford, DoEd also twice searched the electronic system that tracks correspondence sent to and from DoEd and the Secretary. II Cook Decl. ¶ 19. Once nonresponsive documents were removed, DoEd produced the results of the email and electronic correspondence searches to CREW as part of the interim or final responses listed above. *Id.* ¶ 20. DoEd also searched "[a]ll of the personal paper, hard-copy files" of the individuals whose emails or electronic communications were identified as responsive. *Id.* ¶ 22. The documents located in the paper format were duplicative of those produced in the email and electronic correspondence searches. *Id.*

---

[3] Mr. Bashford performed two additional searches for documents pertaining to Ms. Johnette Early, using special search strings because "early" is a common word. Def. Reply, II Bashford Decl. [Dkt. 20-2] ¶¶ 5–7.

## II.     LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252.

FOIA cases are typically and appropriately decided on motions for summary judgment. *Miscavige v. IRS*, 2 F.3d 366, 368 (11th Cir. 1993); *Rushford v. Civiletti*, 485 F. Supp. 477, 481 n.13 (D.D.C. 1980). In a FOIA case, the Court may award summary judgment solely on the basis of information provided by the department or agency in affidavits or declarations when the affidavits or declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Vaughn v. Rosen*, 484 F.2d 820, 826–28 (D.C. Cir. 1973). An agency must demonstrate that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly [or partially] exempt from the Act's

inspection requirements." *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal citation and quotation omitted).

### III.   ANALYSIS

CREW urges the Court to review DoEd's excuses for its segmented production "with great care," Pl. Opp., Dkt. 18, at 2, because there are legitimate concerns about outside influence on DoEd's rulemaking. It notes that DoEd has repeatedly said that its production was "final," only to produce more records: on December 3, 2010 the search was theoretically complete, but DoEd sent another document on December 22, 2010; when DoEd filed its first motion for summary judgment on February 16, 2011, it identified an additional 198 pages sent to the FOIA Service Center by the Office of the Undersecretary on that very date; after CREW filed its opposition to the government's first motion for summary judgment, Dkt. 7, DoEd withdrew its motion, Dkt. 13, and processed an additional 10,000 emails not previously identified; after the release of a mere 500 emails in four segments in the spring of 2011, DoEd declared that it had concluded its document search but then attached 106 documents to its motion for summary judgment filed on June 1, 2011, which it said were reprocessed versions of records already produced.[4] Over all, DoEd has declared at various times that it began its search on August 18, 2010 and ended it only on May 31, 2011, with multiple "final" record productions along the way.

The Court reviews DoEd's affidavits, *Vaughn* indices, and briefs very carefully, as it does in every case. Despite CREW's allegations of improprieties, the Court can find no impropriety in DoEd's handling of CREW's FOIA request.[5]

---

[4] CREW agrees with this description. Pl. Opp. at 8, 20.

[5] CREW does not contest the segregability of any redactions or the application of any FOIA exemption except Exemption 5 for predecisional records, which is addressed separately below. The Court finds that DoEd conducted a proper analysis of information to be segregated and redacted, *see* 5 U.S.C. § 552(b), *Morley v. CIA*, 508 F.3d 1108, 1123 (D.C. Cir. 2007) (requiring

### A.  Adequacy of DoEd's Search

The Court first addresses CREW's argument that DoEd's search for responsive records was inadequate. FOIA requires agencies of the federal government to release records to the public upon request, unless one of nine statutory exemptions applies. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975); 5 U.S.C. § 552(b). To prevail in a FOIA case, the plaintiff must show that an agency has (1) improperly (2) withheld (3) agency records. *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989).

The adequacy of a search is measured by a standard of reasonableness and depends on the individual circumstances of each case. *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990). The question is not whether other responsive documents may exist, but whether the search itself was adequate. *Steinberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994). Before it can obtain summary judgment in a FOIA case, "an agency must show, viewing the facts in the light most favorable to the requester, that . . . [it] has conducted a search reasonably calculated to uncover all relevant documents." *Id.* There is no requirement that an agency search every record system, but the agency must conduct a good faith, reasonable search of those systems of records likely to possess the requested information. *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Once an agency has provided adequate affidavits, the burden shifts back to the plaintiff to demonstrate a lack of a good faith search. *Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993).

An agency may prove the reasonableness of its search via the declaration of responsible agency officials, so long as the declaration is reasonably detailed and not

---

district courts to make "'an express finding on segregability'" (quoting *PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 252 (D.C. Cir. 1993))), and that, in any event, CREW has waived any argument concerning segregation or redaction except as to FOIA Exemption 5. CREW contests only the scope of the search and the applicability of Exemption 5. FOIA Exemption 6, invasion of personal privacy, on which DoEd also relied for some redactions, is not at issue.

controverted by contrary evidence or evidence of bad faith. *Military Audit Project*, 656 F.2d at 738. An agency's declarations are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal citation and quotation omitted). Further, an agency is not required to undertake a search that is so broad as to be unduly burdensome. *Nation Magazine v. U.S. Customs Serv.,* 71 F.3d 885, 890 (D.C. Cir. 2003). "[I]t is the requester's responsibility to frame requests with sufficient particularity to ensure that searches are not unreasonably burdensome . . . [because] FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters." *Judicial Watch, Inc. v. Export-Import Bank,* 108 F. Supp. 2d 19, 27 (D.D.C. 2000) (quotation and citation omitted). Moreover, an agency is "not obliged to look beyond the four corners of the request for leads to the location of responsive documents." *Kowalczyk v. Dep't of Justice,* 73 F.3d 386, 389 (D.C. Cir. 1996).

DoEd's FOIA Service Center initially assigned CREW's request to five offices: Office of Legislative Affairs, Office of Communications and Outreach, Office of Postsecondary Education, Office of the Undersecretary, and Office of Planning, Evaluation and Policy. CREW does not contest these assignments. Subsequently, after CREW's opposition to DoEd's first motion for summary judgment, the FOIA Service Center identified four additional offices that might have responsive records: Office of the General Counsel, Office of the Secretary, Office of Federal Student Aid, and Office of the Deputy Secretary. CREW, again, does not contest any of these assignments.

The FOIA Service Center identified the listed Offices as likely to maintain responsive records because of their responsibility for, or involvement in, its subject matter:

communications with Steven Eisman, FrontPoint Partners, Morgan Stanley Investment Management, Pauline Abernathy, the Institute for College Access and Success, Barmak Nassirian, The American Association of Collegiate Registrars and Admission Officers, Manuel Asensio, the Alliance for Economic Stability, Johnette McConnell Early, and Bob Shireman regarding for-profit information. II Cook Decl. ¶ 16. With the exception of Mr. Shireman, a former DoEd employee who has since left the government, all of these persons are outside DoEd.

DoEd first searched the email accounts of the 17 individuals identified by CREW: eight in the Office of Communication & Outreach, one in the Office of Legislative and Congressional Affairs, five in the Office of Postsecondary Education, one in the Office of Planning, Evaluation, and Policy, and two from the Office of the Undersecretary. Subsequently, after the first round of briefing was withdrawn, DoEd searched the email accounts of two more employees in the Office of the General Counsel, two more employees in the Office of the Undersecretary, one more employee in the Office of Federal Student Aid, two more employees in the Office of Legislative and Congressional Affairs, two more employees in the Office of the Secretary, one employee from the Office of Communication & Outreach, and five employees from the Office of the Deputy Secretary. II Cook Decl. ¶ 21. CREW does not contest any of these searches.

However, CREW opposes summary judgment because "[s]till missing" are records from DoEd officials Michael Dannenberg and Hal Plotkin, as well as Secretary Arne Duncan and his assistant Phil Martin. Pl. Opp. at 12. CREW argues that DoEd "refuse[d] to search the records" of these four individuals in a "concerted effort to protect these policy-level officials from public scrutiny." *Id.* at 13. According to CREW, DoEd's search was deficient

9

both because it failed to recover emails and failed to expand its search for responsive paper records. *Id.* at 11–14.

CREW's objection is without merit. *See Steinberg*, 23 F.3d at 551 (holding that FOIA requires a "search reasonably calculated to uncover all relevant documents" (internal citations and quotations omitted)). As Terry Bashford explains, he had authorized access to the database that contains all emails received and sent since April 20, 2009, by all DoEd employees, including Messrs. Dannenberg and Plotkin and Secretary Duncan, and he searched that database using search terms to which CREW has no substantive objection.[6] *See* I Bashford Decl. ¶¶ 11, 13–15. Moreover, the electronic correspondence of all DoEd personnel, including the four persons specifically identified by CREW, was subject to two separate searches. *See* II Cook Decl. ¶ 19. DoEd also searched the "paper, hard-copy files" maintained by each of the four individuals about which CREW complains, in addition to thirty-two other individuals. II Cook Decl. ¶ 21; Def. Reply, III Cook Decl. [Dkt. 20-3] ¶¶ 7–8. All responsive records have been produced except for those retained under Exemption 5.

CREW further complains that it cannot determine the scope of a search for "personal paper, hard-copy files," because the term has an "uncertain meaning." Pl. Opp. at 13. The Court disagrees; the term speaks for itself. Moreover, DoEd has explained further: "None of [the DoEd offices in question] maintain centralized repositories of records that would have been responsive to the FOIA Request. Rather, individuals in these offices maintain their own paper files, i.e., personal hard-copy paper files. . . . Each of the paper, hard-copy files maintained by these individuals, whether in their offices or elsewhere, were searched manually for any correspondence [related to the FOIA Request]." III Cook Decl. ¶¶ 6–7. DoEd has more than

---

[6] CREW does challenge the adequacy of the search terms on two limited grounds, discussed below.

met its burden of showing that its search was adequate under FOIA. *See Oglesby*, 920 F.2d at 68 (requiring "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched").

### B.    Clarity of Search Terms and Search Dates

CREW argues that the Court should deny DoEd's motion for summary judgment because DoEd has provided conflicting information about the dates of its searches and the terms used in those searches. This argument is unpersuasive.

First, according to CREW, DoEd's search was deficient because the affidavits of Elise Cook and Terry Bashford contain conflicting dates for searches. Pl. Opp. 14–15. It is puzzling, CREW claims, that both Ms. Cook and Mr. Bashford describe a first search on either March 28 or 29, 2011, but Ms. Cook mentions a second search on May 31, 2011, while Mr. Bashford refers to the second search as occurring on March 31, 2011. *Id.* But there is nothing sinister in this inconsistency because Ms. Cook and Mr. Bashford *each* described two separate searches of *two separate systems*. *Compare* I Bashford Decl. ¶¶ 13–15 (describing searches of email system on March 28, 2011, and March 31, 2011) *with* II Cook Decl. ¶ 19 (describing searches of electronic correspondence system, one occurring prior to February 2011, the other occurring on May 31, 2011).

Second, CREW points to what it claims are two conflicts between the search descriptions provided by Elise Cook and Terry Bashford. It challenges the search for documents regarding Morgan Stanley. *See* Pl. Opp. 15 ("According to Ms. Cook, Education's March 29 search included only the term 'Stanley Investment,' while the May 31, 2011 search used both 'Morgan Stanley' and 'Stanley Investment.' Mr. Bashford describes both his March 29 and his March 31 searches as using the terms 'Stanley' and 'Stanley//Investment.'" (citations omitted)).

11

CREW also challenges the search for documents regarding Ms. Johnette Early. *See id.* at 16 ("Ms. Cook describes the March 29, 2011 search as using the term 'Johnette,' while the May 31, 2011 search used the term 'Early.' . . . Mr. Bashford's searches used only the term 'Johnette.'") (citations omitted)). As discussed above, contrary to CREW's understanding, Ms. Cook and Mr. Bashford were describing different searches of different systems. More importantly, CREW has advanced no argument—and the Court can see none—as to why the searches DoEd ran would not have returned all responsive records dealing with Morgan Stanley or Ms. Early. DoEd has further explained that Mr. Bashford originally used only "Johnette" because "early" is a common word, but he later conducted two extra searches specifically seeking documents regarding Ms. Early that had not already been retrieved. *See* II Bashford Decl. ¶ 6 (describing searches involving, *inter alia*, Ms. Early's private Yahoo address). These extra searches did not yield any new documents. *Id.*

The Court thus rejects CREW's argument that DoEd's search was inadequate based on any alleged inconsistency between search dates or search terms.

    **C.**  **Omission of Critical Information from Emails**

CREW objects to DoEd's release of emails because the paper versions lack what CREW argues is "critical information, including complete email addresses for the senders and recipients" and BCC recipient information, as well as metadata. Pl. Opp. at 17–19. This objection is unavailing. FOIA only requires production of responsive records "in any form or format requested by the person if the record is readily reproducible by the agency in that form or format." 5 U.S.C. § 552(a)(3)(B). CREW loses on two accounts. Notwithstanding that it requested that DoEd *search* for records "regardless of format, medium, or physical characters, and including electronic records and information," CREW did not request that DoEd *produce* its records in electronic format, much less electronic format with metadata. *See* FOIA Request at 1–

2.  DoEd thus had no obligation to produce the documents in any particular format.  Moreover, as the Bashford Declaration establishes, *see* I Bashford Decl. ¶¶ 7, 16, DoEd's email records are not "readily reproducible" in electronic format, and the DoEd email retention system "will not display or print" the BCC field "for any retrieved email." *See Sample v. Bureau of Prisons*, 466 F.3d 1086, 1088 (D.C. Cir. 2006) (holding that an agency's "determination as to reproducibility must be accorded 'substantial weight' by the reviewing court"); *accord* 5 U.S.C. § 552(a)(4)(B).

Notwithstanding CREW's failure to request a specific format and DoEd's inability to produce the requested data electronically, CREW invites the Court to find that a government agency must produce electronic copies and/or metadata to comply with FOIA.  The Court declines because it does not see here in CREW's argument any basis to *impose* an electronic copy obligation on a federal agency.  The copying charge which FOIA imposes, *see* 5 U.S.C. § 552(a)(4)(A), indicates that Congress anticipated that agencies would produce hard paper copies of all records requested, particularly when not otherwise requested and readily reproducible.  CREW's argument that it is entitled to metadata and blind copy addresses of all emails, when that information cannot be readily produced by DoEd, fails as a matter of law.  The argument would require the creation of documentation rather than the production of what exists. In addition, there is no legitimate basis to suspect the scope or good faith basis of DoEd's responses here.  *See SafeCard Servs.*, 926 F.2d at 1200 (holding that a FOIA requester cannot rebut an agency's affidavits with "purely speculative claims about the existence and discoverability of other documents" (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981) (internal quotation marks omitted))).

### D. Department-wide Email Search Only in March 2011

CREW finds it suspicious that DoEd only searched a Department-wide database for emails in March 2011 when that database existed as early as April 2009, albeit offsite and

13

controlled by a vendor. Pl. Opp. at 21–23. DoEd has explained that Department policy prevented a general search of employee email by Departmental employees prior to February 2011 and that it conducted such a search soon after it was authorized. *See* I Bashford Decl. ¶¶ 10–11.

The Court need not pause to consider when an agency's reliance on a vendor to house and maintain agency email provides a reason not to search email to answer a FOIA request. What is clear is that DoEd has, in fact, searched all email from April 2009 going forward, covering all email received and sent by anyone in the Department. *See id.* ¶ 11 (referring to "agency-wide electronic searches for email responsive to [CREW's FOIA Request]"). The production of such email to CREW moots the question. *See Nw. Univ. v. Dep't of Agric.*, 403 F. Supp. 2d 83, 85 (D.D.C. 2005) ("Generally, in FOIA cases, '[o]nce the records are produced, the substance of the controversy disappears and becomes moot since the disclosure which the suit seeks has already been made.' (quoting *Crooker v. State Dep't*, 628 F.2d 9, 10 (D.C. Cir. 1980))).[7]

### E. Exemption 5: Deliberative Process Privilege

CREW both opposes DoEd's motion for summary judgment, Pl. Opp at 23, and files its own motion for partial summary judgment, Dkt. 19, on the basis that FOIA Exemption 5 no longer applies to the documents DoEd has segregated. Exemption 5 provides that FOIA does not apply to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency[.]" 5 U.S.C. § 552(b)(5).

---

[7] Although there is an exception to this rule in which courts retain jurisdiction to determine, for example, "whether the search for records was adequate under the standards for adequate records searches required under the FOIA by the relevant case law," *Looney v. Walters-Tucker*, 98 F. Supp. 2d 1, 2 (D.D.C. 2000), *aff'd sub nom. Looney v. F.D.I.C.*, 2 F. App'x 8 (D.C. Cir. 2001), this argument about the timing of electronic searches of email is moot because the Court also concludes that DoEd's search was adequate, as discussed above.

Exemption 5 encompasses materials which would be protected under the attorney-client privilege, the attorney work-product privilege, or the executive deliberative process privilege. *Formaldehyde Inst. v. Dep't Health & Human Servs.*, 889 F.2d 1118, 1121 (D.C. Cir. 1989), *overruled on other grounds by Nat'l Inst. of Military Justice*, 512 F.3d 677 (D.C. Cir. 2008); *see also NLRB*, 421 U.S. at 149 (Exemption 5 includes all documents "normally privileged in the civil discovery context.").

The deliberative process privilege exempts from disclosure documents "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB*, 421 U.S. at 150. Further, Exemption 5 "covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). Such documents are protected in order to promote "the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9 (2001); *accord Tax Analysts v. IRS*, 117 F.3d 607, 617 (D.C. Cir. 1997) (the quality of decision-making would be seriously undermined if agencies were forced to operate in a "fish bowl" since open and frank discussion regarding legal or policy matters would be impossible).

To qualify for withholding, material must be both predecisional and deliberative. *Judicial Watch, Inc. v. Dep't of Energy*, 412 F.3d 125, 129 (D.C. Cir. 2005).

> A document is predecisional if it was prepared in order to assist an agency decisionmaker in arriving at his decision, rather than to support a decision already made. Material is deliberative if it reflects the give-and-take of the consultative process. [The D.C. Circuit's] recent decisions on the deliberativeness inquiry have

>focused on whether disclosure of the requested material would tend to discourage candid discussion within an agency.

*Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (citations and internal quotation marks omitted).

CREW's only argument is that DoEd "no longer needs the confidentiality afforded by Exemption 5" because it has issued its final regulations regarding gainful employment, the subject about which CREW filed its FOIA Request. Pl. MSJ at 11. The argument has no merit.

The first flaw in CREW's argument is that the records withheld by DoEd pursuant to Exemption 5 were dated in 2010, well before the regulations were made final in June 2011. *See* Def. MSJ, Ex. J [Dkt. 17-3] (*Vaughn* Index). The records were thus predecisional in the plainest sense of the word. *See N.L.R.B.*, 421 U.S. at 151–52 ("[C]ourts have uniformly drawn a distinction between predecisional communications, which are privileged, and communications made after the decision and designed to explain it, which are not." (internal citations omitted)). Moreover, the *Vaughn* Index submitted by DoEd demonstrates that the documents fit comfortably within Exemption 5 due to their role in DoEd's deliberative process. *See*, *e.g.*, *Vaughn* Index at 24 (describing "an inter-agency communication between senior Department officials regarding developing an approach to managing external communications related to for-profit education during the development of the proposed Gainful Employment rule").

CREW does not assert that any of the documents postdated the issuance of the regulations, relying solely on the argument that the documents have now lost their "predecisional" character. Pl. MSJ at 11. But the later issuance of a regulation does nothing to change the nature of the documents themselves. As long as records are "part of the deliberative process by which a decision is made," they are exempt from disclosure. *Taxation with*

*Representation Fund v. IRS* (citing, *inter alia*, *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 257 (D.C. Cir. 1977)). Although predecisional documents may lose their protection if "adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public," *id.* (quoting *Coastal States*, 617 F.2d at 866), CREW has not made that argument in this case and it has no record support, as the *Vaughn* Index shows. The Court concludes that DoEd properly withheld certain documents pursuant to Exemption 5 and that the June 2011 issuance of final regulations did not affect the applicability of that exemption.

## IV.   CONCLUSION

CREW attempts to question the good faith of DoEd's response to its FOIA request because of outside news articles and the segmented nature of DoEd's production. The only substantive challenge advanced by CREW concerned Exemption 5 and is clearly without merit. At the point of summary judgment, DoEd has explained its search, the reasons it continued to produce responsive documents, and its results in fully adequate fashion. The Department's motion for summary judgment, Dkt. 17, will be granted and CREW's cross motion for partial summary judgment, Dkt. 19, will be denied. A memorializing Order accompanies this Opinion.

DATE: November 26, 2012

                                                  /s/
                                     ROSEMARY M. COLLYER
                                     United States District Judge